**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS INC., ) | No. 06cv622-PHX-FJM |
| Plaintiff, ) | **AMENDED ORDER** |
| vs. ) | |
| KARL H. ROTHERMUND, JEFFREY M. ) HOLLAHAN, and ANTHONY J. ) MONTGOMERY, ) | |
| Defendants. ) | |

The court has before it plaintiff's motion for temporary restraining order and preliminary injunction (doc. 2), defendants' response (doc. 10), and plaintiff's reply (doc. 12). We heard the parties on March 2, 2006 and invited written memoranda. After the reply was filed we received defendants' motion for leave to file supplemental materials (doc. 13).

I

The complaint in this case is quite unusual. It invokes the jurisdiction of this court, not to decide a "case" or "controversy" under Article III of the United States Constitution, but only to invoke the court's power to grant a temporary restraining order or preliminary injunctive relief. The parties agree that they are subject to an arbitration agreement as to the ultimate resolution of this case. They have submitted to the court a copy of the National

Association of Security Dealers (NASD)Arbitration Code, Section 10335 of which reduces the court's role to that of a preliminary annex to the arbitration.

Historically, courts have annexed arbitration and other forms of alternative dispute resolution as a way to deal with burgeoning caseloads.  Such programs are typically referred to as "court annexed ADR."  But here, the parties have chosen a private dispute resolution mechanism which could properly be characterized as "ADR annexed court."  We are asked only to grant or deny  a temporary restraining order.  If we deny it, our role under their agreement is over and the parties will proceed to arbitration.  If we grant it, our role is still over, but under the agreement the parties may get an accelerated hearing for permanent injunctive relief from *the arbitrators* within fifteen days of the date the court issues the temporary restraining order.  NASD Code section 10335(b)(1).  Thus, in no instance are we being asked to decide a "case" or "controversy" through final judgment.  While the parties have not briefed the issue (because they are in agreement), we believe this process raises extraordinary public policy considerations, especially where, as here, the jurisdiction of an Article III court is invoked.  We will return to this when we discuss the public interest prong of the test for invoking the equitable power of the court.

II

Plaintiff seeks to enforce its rights under agreements with the defendants in connection with the solicitation of business and the possession and disclosure of confidential information.  Defendants worked for plaintiff and then resigned to go to a competing brokerage firm.  Plaintiff's original request that we restrain the defendant Rothermund from traveling to St. Louis to meet with a client of the plaintiff has been mooted.  Plaintiff asks that we restrain the defendants Rothermund, Hollahan, and Montgomery from soliciting clients assigned to them under their agreements with plaintiff.  They also ask us to restrain defendants from using or disclosing confidential client information and ask for the immediate return to plaintiff of all such confidential information.

Defendants contend that they only solicited clients not covered by their agreements with plaintiff and that they only took information in order to advise all of their clients of their

- 2 -

departure from plaintiff's employment. Plaintiffs contend that defendants complied with their agreements only because of the filing of this action.

Under the standard for granting a temporary restraining order or preliminary injunctive relief a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury, (3) the balance of hardships favors the plaintiff, and (4) advancement of the public interest. *Save our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). There is a sliding scale here. A plaintiff may demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in its favor. *Id.*

Here, the defendants did take confidential information and intended to solicit at least one client that was not originally theirs. On the other hand, once this action was filed, the defendants ceased their breaches, and, through counsel, returned the information they took. They had a legitimate need for the names and addresses of their clients so they could advise them of their change in employment, but took sheets which contained more information than that. It is thus highly likely that plaintiffs will prove some breaches during the arbitration.

We next look at the possibility of irreparable injury. This is a dispute over competition. It is likely that the plaintiff will lose many of its clients legitimately simply because the clients will choose to stay with their individual salespersons. It will be very hard to separate those losses from any losses that might be occasioned by breaches of the agreement. This is particularly true, where, as here, there has been voluntary cessation.

Arguably, the balance of hardships tips in favor of the plaintiff because plaintiff could be harmed by defendants' breach while defendants cannot be harmed by being required to comply with their contracts.

The fourth and final element is critical. We consider the public interest. We consider this at two levels. First, the public has an interest in the enforcement of contracts. On the other hand, this is a dispute between private parties over how to divide up the spoils of a securities business. The public's interest is advanced as long as plaintiff's clients are free to

choose to stay or to leave plaintiff's firm. The parties agree on this issue and thus the public interest is served whether we issue the order or not.

At a second level, however, we return to whether the public interest is advanced by the use of this court as an adjunct to private dispute resolution. It is one thing for the court to use private or public alternative dispute resolution as an aid to the ultimate resolution of the case before it. In that regard, the court will always ultimately decide the controversy and enter final judgment. But here, the parties are not asking this court to decide the case or controversy. We will not be asked to decide the ultimate question on the merits. The parties have agreed to submit this case to their arbitrators. As we have already noted, if we grant a temporary restraining order, the parties will appear before their arbitrators within fifteen days for further relief. If we do not, the parties will still be submitting their dispute to their arbitrators.

We do not think it is in the public interest to allow private parties to invoke only the preliminary equitable powers of this court without submitting the case or controversy to this court for its ultimate resolution. Because the parties have not raised this issue, we have no occasion to decide whether their contract is lawful. Nor do we have occasion to decide whether it is constitutional for an Article III court to decide not a case, but only a preliminary piece of a case. But we do conclude that the public is not served by the use of public resources as merely an adjunct to advance a purely private alternative system of justice. It seems to us that if the parties wish to submit their dispute to private arbitration, even to the extent of permanent injunctive relief, then they could amend their agreement to give those same arbitrators the contractual right to hear their application for immediate injunctive relief. The public interest is not served by visiting upon the courts the disruptive effect of an application for temporary restraining order to be replaced by private arbitration within fifteen days.

There are factors in favor of plaintiff's application. It is likely that the defendants have breached their agreements and it is possible that some of their damages will not be ascertainable. There are factors that militate against granting relief. The defendants have

- 4 -

1 voluntarily ceased their behavior and the public interest is not served by a piecemeal
2 invocation of Article III jurisdiction, not within the contemplation of the Federal Arbitration
3 Act, 9 U.S.C. §§ 1, *et seq.*

4 Up to this point we have discussed the traditional test for the granting of a temporary
5 restraining order. Under Rule 65 of the Federal Rules of Civil Procedure, whether a
6 temporary restraining order is granted or not, the court typically would set it down for an
7 evidentiary hearing on an application for preliminary injunctive relief. And after that, the
8 case would be processed as any other case would be to final judgment. But here, the parties'
9 NASD agreement contemplates the use of the court only in connection with the application
10 for temporary restraining order. All other matters, by agreement, will go to the arbitrators.
11 If we grant the temporary restraining order, the hearing will begin within fifteen days of our
12 order. If we do not, there is no telling when they will be heard. Thus, under the peculiar
13 nature of their agreement, a factor militating in favor of granting a temporary restraining
14 order is that the parties will get a second opportunity to seek injunctive relief before their
15 arbitrators within fifteen days, roughly analogous to the sort of hearing we would hold on an
16 application for preliminary injunctive relief after the entry of a temporary restraining order.
17 This factor tips the balance in favor of granting relief in a close case. All in all, we conclude
18 that, given the peculiar posture of this case, the issuance of a limited temporary restraining
19 order may do more good than harm.

20 IT IS THEREFORE ORDERED that defendants Rothermund and Hollahan are
21 restrained from soliciting any clients assigned to them under their agreements with plaintiff.
22 The defendant Montgomery is restrained from soliciting any clients of plaintiff that
23 defendant serviced during his employment with plaintiff. Except as necessary to advise
24 clients of their change of employment, defendants shall not use any confidential or
25 proprietary information belonging to plaintiff. To the extent that they have not already done
26 so, the defendants shall return to plaintiff copies of all records taken from plaintiff (except
27 contact information necessary to advise their clients of their change of employment).

28

1  This temporary restraining order will expire of its own force and effect on the day the
2  NASD arbitration panel rules on plaintiff's request for permanent injunctive relief under
3  section 10335 of the NASD rules, or on May 1, 2006, whichever first occurs.

4  Because we are only ordering the defendants to do that which they are required to do
5  under their agreements, and nothing further, no security is required under Rule 65(c), Fed.
6  R. Civ. P. And because the parties have chosen to resolve their dispute through their private
7  mechanism, and nothing remains for this court, we shall dismiss this action without prejudice
8  and without further notice to the parties on May 1, 2006. This will give them and their
9  arbitrators sufficient time to expeditiously resolve the dispute.

10  IT IS THEREFORE ORDERED GRANTING plaintiff's motion for temporary
11  restraining order (doc. 2). IT IS FURTHER ORDERED GRANTING defendants' motion
12  for leave to file supplemental materials (doc. 13).

13  DATED this 10th day of March, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge